**FILED**
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia
By tblancha at 8:53 am, Feb 10, 2010

# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | Chapter 13 Case |
| LOUISE R. FREEMAN | ) | |
| | ) | Number <u>08-40958</u> |
| *Debtor* | ) | |
| | ) | |
| | ) | |
| | ) | |
| MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS, INC. | ) | |
| | ) | |
| *Movant* | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LOUISE R. FREEMAN | ) | |
| | ) | |
| *Respondent* | ) | |

## MEMORANDUM AND ORDER

## ON MOTION FOR RELIEF FROM STAY

Debtor (also "Borrower") filed Chapter 13 on May 30, 2008. In March of 2006 she had borrowed $720,000.00 from Fremont Investment & Loan ("Fremont" and "Lender") and signed a promissory note and deed to secure debt ("DSD"), pledging her personal residence to secure the debt. Movant, Mortgage Electronic Registration Systems, Inc. ("MERS" and "Movant"), was the named grantee in the DSD which recited that MERS

was acting "as nominee for Lender and Lender's successors and assigns." Security Deed, Dckt. No. 72, p. 4 (November 30, 2009). The DSD also recited that MERS holds only legal title, but if necessary MERS has the right to foreclose, to sell the property, and to exercise any or all of the "interests" granted by Borrower to Lender. Id. at pp. 4-6. Among those interests are the Borrower's performance of obligations contained in both the DSD and the note (Id. at p. 6), the right of acceleration upon default under the DSD (Id. at p. 16), and the power of sale (Id. at p. 6). Those rights are triggered by a breach of any covenant in the DSD, including the obligation to pay the note. Id. at pp. 4, 25.

When Debtor filed her Chapter 13 plan on May 30, 2008, it provided for treatment of the Fremont loan by payment of the pre-petition claim of $40,158.00 in paragraph two, subsection (g) and of the remaining Fremont mortgage in paragraph eight as follows: "Mortgage owed to Fremont Investment or its successor in interest will be paid, on a short sale with the proceeds from a [sic] already approved reverse mortgage." Plan, Dckt. No. 3, p. 2. Neither Fremont nor any other party purporting to hold an interest in the DSD objected to that provision in the plan and the plan was confirmed by order of this Court entered October 21, 2008. The Motion for Relief was filed on February 10, 2009, and has been continued on several occasions because of the continuing dispute between Movant and Debtor.

In March of 2009 Debtor provided to Fremont a letter from Capital Consultants dated March 10, 2009, which purported to represent a tender of $465,000.00 in

proceeds from a reverse mortgage in order to settle the Fremont claim. Fremont never responded in writing to this offer, but there was at least one conversation between Debtor or her representatives and MERS or its counsel. Ultimately no agreement was reached, no payments were made, and the DSD remained uncancelled.

The evidence at the hearing on December 7, 2009, is essentially undisputed. The DSD conveyed an interest in 738 East Victory Drive, Savannah, Georgia, and there is no equity—taking into consideration that the outstanding indebtedness is more than $700,000.00 and that the parties have not disputed that the value is substantially less than that, perhaps less than $500,000.00. It is further undisputed that none of the seventeen monthly payments that have come due since the filing of the case have been paid. It is further undisputed that the $720,000.00 consideration recited in the papers was, in fact, received by Debtor and that Debtor scheduled a debt in the amount of $714,557.00 to "Fremont Investment & Loan" as undisputed. Petition, Dckt. No. 1, p. 13. MERS ("as nominee for HSBC Bank USA, National Association, as Trustee under the pooling and servicing agreement dated as of September 1, 2006, Fremont Home Loan Trust 2006-C, it successors and/or assigns") filed a claim in the case in the amount of $790,665.85 with notice and payment to be sent to Litton Loan Servicing L.P. Claim, Claims Register No. 6. Debtor did not object to the proof of claim, which therefore became an allowed claim under 11 U.S.C. § 502(a). The Motion for Relief From Stay was filed by "Mortgage Electronic Registration Systems, Inc. as nominee for HSBC Bank, USA, National Association, as Trustee, by Litton Loan Servicing, L.P." Motion, Dckt. No. 35. Finally, it is undisputed that

MERS did not produce a copy of the promissory note in response to requests from Debtor's counsel and did not produce one at the hearing in order to respond to certain of Debtor's contentions which will be outlined below.

The Court has been informed that Debtor is now deceased. Neither her estate nor any of her heirs qualifies for a "reverse mortgage."[1] Based on age, the earliest that any of her heirs at law might qualify would be December 2011.

Movant contends that there is no equity in the property and therefore the burden of proving the elements to defeat a motion for relief from stay shift to Debtor under 11 U.S.C. § 362(g). Debtor contends (1) that there is a threshold issue as to whether MERS has standing or is the real party in interest for purposes of prosecuting the Motion; (2) that there were certain irregularities in the closing surrounding this transaction which give Debtor, and now Debtor's estate, a cause of action for unspecified relief; and (3) that the terms of the confirmed plan are *res judicata* and that MERS cannot insist upon its right to stay relief when the plan clearly provides for cancellation of that indebtedness in exchange for the proceeds of a short sale tender from the proceeds of a reverse mortgage.

---

[1] A reverse annuity mortgage, or "reverse mortgage" is "[a] mortgage in which the lender disburses money over a long period to provide regular income to the [usually elderly] borrower, and in which the loan is repaid in a lump sum when the borrower dies or when the property is sold." BLACK'S LAW DICTIONARY 1033 (8th ed. 2004). *See also* 12 U.S.C.A. § 1715z-20 (stating that a reverse mortgage is only insurable if the homeowner is 62 years or older); Top Ten Things to Know if You're Interested in a Reverse Mortgage, http://www.fhasecure.gov/offices/hsg/sfh/hecm/rmtopten.cfm (last visited Jan. 21, 2010) ("To be eligible for a FHA [home equity conversion mortgage], the FHA requires that you be a homeowner 62 years of age or older.").

CONCLUSIONS OF LAW

I. Procedural Defenses

To be entitled to relief from the automatic stay, MERS must both (1) have standing and (2) be the real party in interest. In re Mitchell, 2009 WL 1044368, * 2 (Bankr. D. Nev. 2009); In re Relka, 2009 WL 5149262, *3 (Bankr. D. Wyo. 2009); Mortgage Elec. Registration Sys., Inc. v. Medina, 2009 WL 4823387, *2 (D. Nev. 2009) (stating that MERS only has standing if it is a real party in interest). Before the Court can address the issue of relief from stay, it must first determine if Movant is the real party in interest and / or has standing to bring the motion. After consideration of the multiple cases that have addressed this and similar issues, I conclude that MERS does have standing and is the real party in interest for the prosecution of this Motion.

a. Debtor's Assertion that MERS Does Not Have Standing

"[S]tanding [generally] pertains to suits brought by individuals or groups challenging governmental action which has allegedly prejudiced their interests. On the other hand, the real party in interest question is raised in those much rarer instances between private parties where a plaintiff's interest is not easily discernible." Malamud v. Sinclair Oil Corp., 521 F.2d 1142, 1147 (6th Cir. 1975). See also Glickstein v. Sun Bank/Miami, N.A., 922 F.2d 666, 670 (11th Cir. 1991) ("The standing doctrine, which has been very much tied to litigation asserting the illegality of governmental action, is of limited applicability in cases between private parties." (internal quotations omitted)) *abrogated on other grounds by*

Saxton v. ACF Industries, Inc., 254 F.3d 959 (11th Cir. 2001).

Nevertheless, I hold that MERS has standing to pursue this action. Debtor's counsel correctly directs the Court to Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) for the proposition that to have standing: (1) the party must have suffered an injury in fact, (2) "there must be a causal connection between the injury and the conduct complained of," and (3) it must be likely that the injury will be redressed by a favorable decision.

In Glickstein, the Eleventh Circuit noted that the injury requirement can be met by an allegation that the defendant's action caused an injury. 922 F.2d at 670. In the instant case, MERS's right to foreclose on Debtor's residence granted by the DSD is impaired by the automatic stay, and relief from the stay would redress that injury. I hold that MERS has standing to pursue this relief because its injury can be redressed by a favorable decision.

b. Debtor's Assertion that the Non-Production of the Note Precludes MERS from Establishing Real Party in Interest Status

Despite the absence of the note, I am not without evidence as to the existence of and the terms of the note. The DSD names the Lender, the Borrower, the Grantee, the principal amount, the terms, the interest rate, and twenty-four pages of additional details regarding the transaction. Security Deed, Dckt. No. 72, pp. 4-27. Debtor signed the DSD, evidencing her agreement to be bound by the terms of the DSD and the note which it

secures.

Second, it has been stipulated that the amount recited in the DSD was actually advanced to Debtor and that there is no evidence of repayment. By scheduling the debt and by making provision for payment of that debt in the plan, Debtor acknowledged that a debt was owed. This acknowledgment obviates the necessity of producing the note because both parties had the opportunity to adjudicate the existence of the note prior to plan confirmation.[2] Debtor had ample opportunities during the plan proposal and confirmation process to challenge MERS's right to repayment of the loan. Because Debtor failed to object to the claim, she is estopped from challenging MERS's real party in interest status. The doctrine of collateral estoppel requires that:

> (1) [T]he issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

In re Clark, 411 B.R. 507, 515 (Bankr. S.D. Ga. 2009) (Davis, J.) (citing CSX Transp., Inc.

---

[2] *See* Vandegriff v. Hamilton, 519 S.E.2d 702 (Ga. Ct. App. 1999) (holding that the debtors' "admission that they borrowed the money, signed the note, and defaulted" on the note established a prima facie case: and that production of the note was unnecessary); *See also* Taylor, Bean & Whitaker Mortg. Corp. v. Brown, 583 S.E.2d 844 (Ga. 2003) (noting that because the mortgagor admitted to the court that she had not paid her promissory note, she was not entitled to equitable relief); O.C.G.A. § 44-14-60 (A security deed passes "the title of the property to the grantee until the debt or debts which the conveyance was made to secure shall be fully paid.").

v. Bhd. of Maint. of Way Employees, 327 F.3d 1309, 1317 (11th Cir. 2003)). In the instant case, factors (1) and (3) are not in dispute. The issue—whether MERS can assert legal rights to repayment of this debt—is the same issue implicated on a motion for relief from stay as it was during the claims allowance process and during the confirmation process. Because it is the same issue, factor (1) is met. The determination of this issue was a necessary part of this Court's confirmation of that plan. Therefore factor (3) is met. However, factors (2) and (4) require further analysis.

In In re Camacho, 411 B.R. 496 (Bankr. S.D. Ga. 2009) (Davis, J.), I analyzed these two remaining factors under Georgia's collateral estoppel statute. Because Georgia's requirements are sufficiently similar to the Federal requirements, I adopt the same analysis I used in Camacho,[3] in which I analyzed whether a default judgment meets the "actually litigated" standard and the "full and fair opportunity to litigate" standard. There I held that a Defendant's choice not to defend a lawsuit did not mean that the issue had not been "actually litigated." Id. at 502. Because the defendant in Camacho chose not to litigate his rights, the issue was "litigated." I also held that a "full and fair opportunity" to litigate requires nothing more than "notice and an opportunity to be heard." Id. at 503. A party cannot fail to prosecute his own interest and then decry a judgment against him.

---

[3]"Under Georgia law, a party may only assert the doctrine of collateral estoppel if the issue was (1) raised in a prior proceeding, (2) actually litigated and decided, and (3) necessary to final judgment." In re Camacho, 411 B.R. 496, 501 (Bankr. S.D. Ga. 2009) (Davis, J.) (citing Boozer v. Higdon, 252 Ga. 276, 278, 313 S.E.2d 100, 102 (Ga.1984)). In Camacho, I also analyzed the additional "full and fair opportunity to litigate" requirement, despite its questionable status as a collateral estoppel requirement in Georgia. See Camacho, at fn. 2.

Because MERS, as nominee, filed a proof of claim, styled in its own name as the creditor, and because Debtor failed to object to that claim under 11 U.S.C. 502(b) or to otherwise challenge MERS's right to payment, Debtor is estopped from challenging MERS's right to that payment in this proceeding.

Debtor's admission that a debt is owed to MERS makes this case different from all cases cited by Debtor's counsel. Debtor relies on In re Sheridan, 2009 WL 631355 (Bankr. D. Idaho 2009) for the proposition that MERS does not have standing to bring a Motion for Relief from Stay under Rule 17(a)(1). In Sheridan, the court noted that "[e]ven assuming that MERS as a 'nominee' had sufficient rights as an agent to advance its principal's stay relief request, there remains an insuperable problem. The Motion provides no . . . evidence[] to show that the [Lender] . . .has any interest in the subject Note or the subject Deed of Trust." Id. at *4. The opinion made no mention of claims allowance or plan confirmation, highlighting the difference between those facts and the facts before the court today. In the instant case, Debtor admitted that a debt is owed to MERS. In fact, Debtor proposed, and the Court confirmed a plan in which MERS (as nominee for HSBC Bank USA, N.A., as Trustee by Litton Loan Servicing L.P.) is to receive the entire proceeds from the sale of the house. Debtor's disclosure of an undisputed secured claim in the schedules, her failure to object to the claim filed by MERS, and confirmation of a plan which obligates her to pay the debt all establish that the Lender has an interest in the note and DSD. Debtor also cites In re Mitchell, 2009 WL 1044368 (Bankr. D. Nev. 2009), in which the court noted that there

9

were evidentiary problems regarding the possession of the note. In Mitchell, the court noted that even though MERS was named the initial nominee, MERS failed to establish that it was the nominee for the current holder of the note. Id. at *4. As outlined above, such evidentiary problems are not present in this case.

This arguable evidentiary defect is questionable in any event. Sheridan and Mitchell both decide, without explanation, that MERS's ability to enforce the DSD expires when the loan is transferred from the loan originator to a successor note-holder despite the plain language in the security deed that "MERS act[s] . . . as nominee for Lender and Lender's successors and assigns." Sheridan, 2009 WL 631355 at *5, Mitchell, 2009 WL 1044368 at *5, Security Deed, Dckt. No. 72, p 4.

After consulting the authorities on the subject matter, I can find no case law or statutory authority for the proposition suggested by Debtor, that she may—after disclosing the debt on her Chapter 11 petition, after failing to oppose the claim, and after providing for payment of the debt in a confirmed plan—challenge MERS's standing as a real party in interest now that MERS seeks relief from the automatic stay.

In fact, the cases cited by MERS are persuasive. Most notably, Trent v. Mortgage Electronic Registration Systems, Inc., 288 Fed. Appx. 571, 572 (11th Cir. 2008) states plainly that "[u]nder the mortgage contracts, [MERS] has the legal right to foreclose on debtor's property." Similarly, Mortgage Electronic Registration Systems, Inc. v.

Revoredo, 955 So.2d 33 (Fla. 3d DCA 2007) held that because "no substantive rights, obligations or defenses are affected by the use of the MERS device, there is no reason why mere form should overcome the salutary substance of permitting the use of this commercially effective means of business." A Massachusetts bankruptcy court held that:

> [T]he logic of a denial of MERS's foreclosure right as mortgagee would lead to anomalous and perhaps inequitable results, to wit, if MERS cannot foreclose though named as mortgagee, then either [Lender] can foreclose though not named as mortgagee or no one can foreclose, outcomes not reasonably or demonstrably intended by the parties.

In re Huggins, 357 B.R. 180, 184 (Bankr. D. Mass. 2006).

Finally, in Greer v. O'Dell, 305 F.3d 1297, 1302 (11th Cir. 2002) the Eleventh Circuit Court held that a loan servicer is a real party in interest and has "standing to conduct, through legal counsel, the legal affairs of the investor relating to the debt it services." In Greer, a loan servicer bought, from the lender, the credit card accounts of borrowers who had filed Chapter 13. The actual transfer of the accounts did not happen at that time, but the loan servicer was engaged to handle the accounts through the bankruptcy proceeding, until it took actual possession of the accounts. The court held that "the real party in interest principle is a means to identify the person who possesses the rights sought to be enforced," and that because the loan servicer was obligated to protect its interest and the interest of the lender, it had real party in interest status. Id. at 1303. In this case, MERS is obligated to enforce the terms of the note as evidenced by the language in the DSD and similarly has real party in interest status.

### c. Debtor's General Assertion that MERS is not the Real Party in Interest

Debtor's counsel correctly points out that "[t]he real party in interest doctrine generally falls within the prudential standing doctrine." Letter Brief, Dckt. No. 75, p. 3 (December 3, 2009) (citing In re Kang Jin Hwang, 396 B.R. 757, 769 (Bankr. C.D. Cal. 2008)). To the extent that the two doctrines are different, I hold that MERS is a real party in interest and that MERS has prudential standing.

Federal Rule of Bankruptcy Procedure 4001(a)(1) states that "[a] motion for relief from an automatic stay provided by the Code . . . shall be made in accordance with Rule 9014." Bankruptcy Rule 9014(c) states that Rule 7017 applies to a motion for relief from stay. Bankruptcy Rule 7017 makes Rule 17 of the Federal Rules of Civil Procedure applicable to certain Bankruptcy proceedings. Federal Rule 17(a) requires that "[a]n action must be prosecuted in the name of the real party in interest" and it lists seven non-exclusive instances of parties that:

> may sue in their own names, without joining the person for whom the action is brought: (A) an executor; (B) an administrator; (C) a guardian; (D) a bailee; (E) a trustee of an express trust; (F) a party with whom or in whose name a contract has been made for another's benefit; and (G) a party authorized by statute.

The language of the DSD clearly meets the standard required by Rule 17(a)(1)(F). It states that MERS "act[s] . . . as a nominee for [Fremont] and [Fremont's] successors and assigns." Security Deed, Dckt. No. 72, p. 6. MERS is the grantee, and MERS was expressly granted the right to foreclose, sell the property, release the DSD, or enforce

other Lender's rights. Id. at pp. 4-6. "[T]he real party in interest principle is a means to identify the person who possesses the right sought to be enforced." 6A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 1542 (2009). *See also* Lagondino v. Maldonado, 789 P.2d 1129, 1132 (Haw. Ct. App. 1990) (applying HRCP 17(a), which is identical to Federal Rule 17(a)); 4 Moore's Federal Practice § 17.10[3][d] (Matthew Bender 3d ed.) ("A representative who enters into a contract for the benefit of a third party is a real party in interest entitled to enforce that contract."). Because MERS holds the right to foreclose in the event of default, MERS clearly qualifies as a real party in interest.

Therefore, based on the text of the Code, the state of the law in the Eleventh Circuit, persuasive cases from other courts, and the actions of the parties, I hold that MERS meets the requirements of a real party in interest, and has standing to pursue this Motion for Relief from Stay.

## 2. Irregularities in the Closing Process

After consideration of the counsels' arguments and citations I conclude that any issues relating to the closing of the transaction sale are purely a matter of state law which this Court will abstain from hearing pursuant to 28 U.S.C. § 1334(c)(1). *See* In re R.J. Groover Constr., LLC, 411 B.R. 473, 480 (Bankr. S.D. Ga. 2008) (Davis, J.); In re Fussell, 303 B.R. 539, 547 (Bankr. S.D. Ga. 2003) (Davis, J.); In re Chadwick, 296 B.R. 876, 883 (Bankr. S.D. Ga. 2003) (Davis, J.).

### 3. Debtor Argues that the Plan Should be Enforced as a Matter of Res Judicata

Debtor argues that the doctrine of *res judicata* requires MERS to accept a short sale payoff and thus prohibits it from pursuing stay relief. I hold that the doctrine is now unavailable to Debtor's estate—even if it might have been available at confirmation—because Debtor is deceased and neither her estate nor any of her heirs are in a position to perform in accordance with the terms of the confirmed plan and will not be for almost another two years. *See* "Reverse Mortgage", *supra* note 1. Moreover, Debtor's inability to comply with the confirmed plan constitutes "cause" for granting relief from stay. Cause is a basis for relief pursuant to 11 U.S.C. § 362(d)(1), which lists two non-exclusive reasons for granting relief. The term "cause" is appears in other places in the Code. "A term appearing in several places in a statutory text is generally read the same way each time it appears." Ratzlaf v. United States, 510 U.S. 135, 143 (1994). Therefore when looking for a fuller understanding of what the drafters meant by "cause," I am persuaded by other uses of the term within the Code.

For example, "cause" is used in both 11 U.S.C. § 1307(c) and 11 U.S.C. § 1112(b)(4), the latter of which lists sixteen non-exclusive reasons for dismissal or conversion. In § 1112(b)(4)(M) the Code states that "inability to effectuate substantial consummation of a confirmed plan" is a cause for conversion or dismissal. Even though that language does not appear in Chapter 13, the Chapter 13 list is non-exclusive and I adopt that language as a basis for dismissal of a Chapter 13. Debtor's plan as confirmed is impossible

to consummate, which supports the granting of relief for cause. 11 U.S.C. § 362(d)(1); *See also* In re Nichols, 440 F.3d 850, 856 (6th Cir. 2006) ("Generally, before modifying or lifting a stay, a court should first weigh the equities by conducting a fact-specific analysis of the circumstances surrounding the default."); In re Shultz, 325 B.R. 197, 201 (Bankr. N.D. Ohio 2005) ("[O]nce a plan is confirmed, 'cause' for relief from stay must be based upon postconfirmation circumstances, such as a default by the debtor under the terms of the plan."); In re Uvaydov, 354 B.R. 620, 623 (Bankr. E.D.N.Y. 2006) ("[I]t is well established under decisional law that a debtor's failure to make post-petition mortgage payments in bankruptcy rehabilitation proceedings can constitute cause for relief under § 362(d)(1)."); In re Schuessler, 386 B.R. 458, 480 (Bankr. S.D.N.Y. 2008) ("To be sure, the failure to make mortgage payments constitutes 'cause' for relief from the automatic stay and is one of the best examples of a 'lack of adequate protection' under Section 362(d)(1) of the Bankruptcy Code.").

## II. Motion for Relief

Having held that MERS is a real party in interest and thus has the requisite standing to pursue its interests in this property, I turn now to the merits of the Motion for Relief From Stay. Motion, Dckt. No. 35. The Code allows relief from the automatic stay to be granted "for cause," including lack of adequate protection to the creditor, and if the debtor does not have equity in the property and the property is "not necessary to an effective reorganization." 11 U.S.C. § 362(d). In the instant case, it undisputed that the property has no equity, that at least seventeen payments have been missed, and that Debtor (as she is now

deceased) does not need the property for an effective reorganization. Debtor presents no substantive defense to the motion for relief, challenging only MERS's real party in interest status and standing to bring it. Because MERS does have standing to bring the motion, because MERS is a real party in interest, because "cause" exists for relief from stay, and because Debtor offers no substantive evidence in response to MERS's proof of lack of equity, I grant MERS's section 362(d) Motion for Relief from Stay.

ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that the Movant's Motion for Relief is GRANTED.

Lamar W. Davis, Jr.

United States Bankruptcy Judge

Dated at Savannah, Georgia

This 9th day of February, 2010.